Ann E. Menasche
SB#74774
Law Office of Ann E. Menasche
1901 First Avenue, Suite 100
San Diego, CA 92101
(619)798-6835 (phone)
(619) 702-7073 (fax)
ann@bulldogforjustice.com

Adriane R. Bracciale
SB#275384
Law Offices of Adriane R. Bracciale
9778 Katella Avenue, Suite 103
Anaheim, CA 92804
(619) 339-7112 (phone)
adriane@arb-legal.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ENNIS, MICHAEL MENDEZ, AND MAURICE TRULL,<br><br>                    Plaintiffs,<br><br>vs.<br><br>14TH & COMMERCIAL CIC-FHHP, LP DBA ST. TERESA OF CALCUTTA APARTMENTS; ROYAL PROPERTY MANAGEMENT GROUP, HYDER PROPERTY MANAGEMENT PROFESSIONALS LLC,<br><br>                    Defendants. | Case No.:  '23CV1316 BAS AHG<br><br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES; DEMAND FOR JURY TRIAL |

///

# INTRODUCTION

1.  Plaintiffs are people with mobility disabilities who live at St. Teresa of Calcutta Apartments, a newly constructed 15 story high rise building that has received many millions of dollars in federal and state loans, grants, tax credits and project-based section 8 vouchers. St. Teresa provides 403 affordable housing units to low income and formerly unhoused individuals, many of whom have disabilities.   Due to their disabilities, plaintiffs are dependent on working elevators to travel safely to and from their apartment to carry out their daily life activities without disruption, including to have access to their doctors and caregivers as needed, and to avoid isolation.

2.  Yet, from the start of Plaintiffs' tenancies, Defendants have persistently failed and refused to adequately or effectively repair or maintain the elevators and replace defective elevators as needed.  This has resulted in repeated and ongoing elevator breakdowns, thereby denying plaintiffs access, disproportionately impacting them based on their disabilities and causing them to suffer severe harm in violation of federal and state anti-discrimination laws.

3.  As a remedy for the statutory violations described herein, Plaintiffs seek an injunction compelling Defendants to maintain the accessible features that provide ready access to disabled tenants such as Plaintiffs and to provide reasonable accommodations to disabled tenants and damages for the injuries Plaintiffs have suffered and will continue to suffer until Defendants change their discriminatory behavior.

# JURISDICTION

4. This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. section 1331 for violations of  29 U.S.C. section 794, and 42 U.S.C. sections 3601 et seq. This Court has jurisdiction over the pendent state law claims brought under California law pursuant to 28 U.S.C. section 1367.

**VENUE**

5. Venue is proper pursuant to 28 U.S.C. section 1391(b) and founded on the fact that the real property which is the subject of this action is in the City of San Diego located within this Court District and that Plaintiffs' causes of action arose in this District.

**PARTIES**

6. Plaintiffs CHRISTINA ENNIS, MICHAEL MENDEZ and MAURICE TRULL are all lawful tenants residing at St. Teresa of Calcutta Apartments located at One 14th Street, San Diego. California.   At all relevant times, Plaintiffs have mobility disabilities that substantially limit one or more major life activities and that prevent each of them from safely going up and down stairs without aggravating their condition or make it impossible to use stairs entirely.  Plaintiffs are therefore dependent on working elevators to enter and leave their apartment.

7. Plaintiff CHRISTINA ENNIS is a 47-year-old woman with degenerate disk disease affecting her back and neck and limiting her mobility. She also suffers from a heart condition. She has rented an apartment on the sixth floor at St. Teresa's since February of 2023. Climbing stairs is excruciatingly painful for her and results in worsened symptoms. She also has a trained service dog who needs to be taken outside regularly.  ENNIS is and at all relevant times herein was a "handicapped person" as defined by 42 U.S.C. section 3602, and a "person with a disability" as defined in 29 U.S.C. section 705 (9)(B), California Government Code section 12926, California Civil Code section 54.1, and Civil Code section 3345.

8. Plaintiff MICHAEL MENDEZ is a 66-year-old man who is paralyzed on his right side because of five strokes.  He has rented an apartment at St. Teresa's on the sixth floor since February of 2023. Mr.Mendez uses a wheelchair or a walker to ambulate and it is impossible for him to use the stairs.  Mr. Mendez has a

daily caretaker who provides him with personal care and assistance but who will not visit him when the elevators are not working.  He also has bi-weekly physical therapy appointments he must attend outside the building.  Mr. Mendez is and at all relevant times herein was a "handicapped person" as defined by 42 U.S.C. section 3602, and a "person with a disability" as defined in 29 U.S.C. section 705 (9)(B), California Government Code section 12926, California Civil Code section 54.1, and Civil Code section 3345.

9. Plaintiff MAURICE TRULL is a 54-year-old man with spina bifida who must always uses a wheelchair to ambulate.  It is impossible for him to use the stairs. Mr. Trull has been living in a rented apartment on the 3rd floor at St. Teresa's since February of 2023.   Mr. Trull is and at all relevant times was a "handicapped person" as defined by 42 U.S.C. section 3602, and a "person with a disability" as defined in 29 U.S.C. section 705 (9)(B), California Government Code section 12926, California Civil Code section 54.1, and Civil Code section 3345.

10. Defendant 14th & COMMERCIAL CIC-FHHP, LP dba St. Teresa of Calcutta Apartments (hereinafter "St. Teresa's), is a California limited partnership, that constructed and currently owns St. Teresa's located at One 14th Street, San Diego. The building was officially opened in late January or early February of 2022.  The 15-story property provides 403 units of low-income housing with supportive services for people with disabilities, seniors, families, and veterans, including 270 units set aside for previously homeless individuals.  The accessibility features include three elevators to each floor and community areas that are fully ADA accessible.  Funding for the project included 3.8 million from federal HOME Investment funds from the U.S. Department of Housing and Urban Development (HUD) as part of a 11.5-million-dollar loan from the San Diego Housing Commission; and 14 million in state funds through the No Place like

Home Program provided through San Diego County. The property also receives federal funds through the provision of 270 Project based Section 8 vouchers.

11. Defendant HYDER PROPERTY MANAGEMENT PROFESSIONALS LLC, is a limited liability company formed in Arizona that managed the operation of the One 14th Street property on behalf of St. Teresa prior to March 1, 2023, including responsibility for maintenance of accessible features.

12. Defendant ROYAL PROPERTY MANAGEMENT, is a California stock corporation which took over management of the St. Teresa property beginning on March 1, 2023, including responsibility for maintenance of accessible features.

13. Plaintiffs are informed, believe, and thereupon allege that each Defendant was at all relevant times the agent, employee, or representative of each other Defendant. Each Defendant, in doing the acts or in omitting to act as alleged in this complain, was acting with the course and scope of his or her actual or apparent authority pursuant to such agency, or the alleged acts or omissions of each Defendant as agent were subsequently ratified and adopted by each Defendant as principal.

## FACTS COMMON TO ALL CAUSES OF ACTION

14. Because St. Teresa is new construction, with first occupancy occurring after March 13, 1991, Defendants were required to design and construct the apartment building so the common areas are readily accessible and usable by persons with disabilities, including by installing a sufficient number of fully functional working elevators that were not defective.

15. At all relevant times, Defendants were required to maintain the accessible features of the property including requiring an accessible path of travel from public transportation and private parking to a dwelling unit. Such a path of travel in a multi-story building necessarily requires a sufficient number of non-defective useable and accessible elevators.

16. However, since the time the building was opened for occupancy, the three elevators have rarely been working at the same time, with almost constant breakdowns and malfunctions.  Plaintiffs are informed and believe and therefore allege that the elevators have been defective from the start and never replaced and/or have been and continue to be improperly maintained and repaired. Repairs have been repeatedly and unreasonably delayed, and when performed, were inadequately and ineffectively done, and/or the elevators were not replaced when necessary, and the elevators would quickly break down again. On several occasions, all elevators have been taken out of service, leaving disabled tenants trapped for many hours in their apartments or unable to return to their unit. Tenants have been stuck in the elevator multiple times with the fire department needing to be called; or forced to wait many hours for an elevator to be able to leave or enter their apartment unit.

17.  Even when the elevators are operational, they do not work properly. Frequently, elevator buttons on multiple floors have been out of commission, making it impossible to get an elevator to come to these floors without having to first reach someone from security, which is not always possible.  The numbered lights in the elevators are often broken. The elevator doors close so rapidly that Plaintiffs and other tenants with disabilities have been injured.   When stepping into an elevator, the elevators often drop half an inch and shake like they are going to fall which can not only be terrifying but can cause disproportionate harm to disabled tenants including the Plaintiffs.  In addition, Defendants have designated one or two elevators for exclusive use by maintenance personnel for days at a time, thereby denying access to tenants including Plaintiffs.

18. Since December of 2022, on at least five separate days all three elevators were inoperable and/or taken out of commission to undergo repairs and not available to tenants.  On at least twenty two days and often multiple days at a time,

there was only one available elevator.  Rarely were there three working elevators to service the hundreds of tenants at St. Teresa's, most with disabilities. The result was overcrowded elevators and long waits.

17. For tenants with disabilities including Plaintiffs, who depend on the elevators, these frequent breakdowns and malfunctions are more than a mere nuisance, forcing them to attempt to navigate the stairs at great pain to themselves, risking serious injury and aggravation of their condition; or causing them to miss medical appointments, or be unable to walk their dog or receive a visit from an in-home care worker, or stay isolated in their apartment. Waiting extended times for elevators also causes disproportionate harm to Plaintiffs and other tenants based on their disabilities who may need to lie down and rest regularly, have ready access to a restroom (there are no restrooms in the first-floor lobby) or may not be able to stand or stay seated in a wheelchair for an extended period without causing pain. Even when one or two of the three elevators are out of commission and the rest operational, or just the buttons are not working, the above-described hardships may still occur and cause disproportionate harm on disabled tenants including Plaintiffs who depend on an adequate number of fully functional elevators for access.

18. Plaintiffs have informed Defendants of their disabilities and requested Reasonable Accommodations asking that something be done to provide Plaintiffs with working elevators or otherwise to secure their access to and from their apartments.  Defendants never provided any response to Plaintiffs' requests nor did they engage in the interactive process with Plaintiffs.

**CHRISTINA ENNIS**

19.  Ms. Ennis has experienced numerous and ongoing hardships from the almost constant broken elevators throughout her tenancy.  She has been forced to miss appointments or delay running errands or been forced to stay in her apartment. On December 6, 2022, when all three elevators were inoperable, she

was forced to take the stairs to take her service dog outside.  This resulted in excruciating pain and aggravation of her medical condition.

20. Again, on January 8, 2023, with all three elevators out of service Ms. Ennes went up and down 6 flights of stairs to take her dog out.  She vomited and almost passed out due to the stress on her heart.

**MICHAEL MENDEZ**

21.  Mr. Mendez has also experienced numerous and ongoing hardships from the broken elevators during his time as a tenant.  He has been forced to miss physical therapy appointments because he couldn't go down to the lobby and leave the building; he has been stuck in the lobby for many hours unable to go into his apartment. On multiple occasions, he missed his home nurse appointments because either the nurse couldn't get to his apartment, or he couldn't get back into his apartment due to elevators not working.

22. In January of 2023, when all three elevators were out of commission, Mr. Mendez was required to wait for many hours at night for the repairman to come and do the repairs so he could get back into his apartment. The long wait was extremely hard on his physical condition.

23. Even when two out of the three elevators were working, Mr. Mendez would experience long delays because the elevators were crowded, and he couldn't fit into the elevator with his wheelchair.

**MAURICE TRULL**

24. Mr. Trull has also suffered severe hardship due to the high frequency of elevator breakdowns throughout his tenancy at St. Teresa's.  He has spent long periods of time in his wheelchair waiting for elevators to get back into his apartment, preventing him from lying down as he should.   He has also been isolated and stuck in his apartment and has missed appointments because the broken elevators interfered with his ability to leave the building.

25. On two or three occasions in December and January of 2023, all three elevators were out of commission, and he was forced to wait five or six hours until 11:00 or 11:30 at night for the elevators to be repaired so he could return to his apartment.  This caused him to suffer back pain and aggravated his pressure sores.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF FAIR HOUSING AMENDMENTS ACT
### AGAINST ALL DEFENDANTS
### (42 U.S.C. § 3601 *et seq.*)

26. Plaintiffs incorporate by reference the preceding paragraphs.

27. Plaintiffs plead this claim against all Defendants.

28. The federal Fair Housing Amendments Act (FHAA) makes it unlawful for a housing provider "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter, a person residing in or intending to resident in that dwelling after it is sold, rented, or made available; or any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1); 24 C.F.R. § 100.202(a).

29. The FHAA also makes it unlawful to fail to design and construct multi-dwelling units for first occupancy after March 13, 1991, so that public use and common use portions of the dwellings are readily accessible and usable by persons with disabilities. 42 U.S.C.  3604(f)(3)(C).  There must be an accessible route into and through the dwelling. 56 FR 9472.  "Accessible route" means "a continuous unobstructed path connecting accessible elements and spaces in a building…that can be negotiated by a person with a severe disability using a wheelchair and that is also safe for and usable by people with other disabilities…" 53 FR 4492, § 100.201.

30. It is further unlawful under the FHAA "[t]o discriminate against any

person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person; or a person residing in or intending to reside in that dwelling after it is sold or made available; or any person associated with that person." 42 U.S.C. § 3604(f)(2); 24 C.F.R. § 100.202(b).

31. Discrimination under the FHAA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(3)(B); 24 C.F.R. § 100.204(a).

32. Discrimination under the FHAA also includes "[f]ailing or delaying maintenance or repairs of sale or rental dwellings because of …handicap." 24 C.F.R. § 100.65(b)(2).

33. St. Teresa's is a covered multi family dwelling subject to the FHAA. 42 U.S.C. § 3604(f)(7)(A), The dwelling was built for first occupancy after March 13, 1991.

34. Plaintiffs are qualified individuals with disabilities within the meaning of FHAA.

35. Defendants' actions and omissions discriminate against Plaintiffs because of their disability in violation of the FHAA. Defendants' discriminatory conduct includes but is not limited to:

- Failure to design and construct the property so that the common use portion are readily accessible and usable by people with disabilities with an accessible route, by installing defective elevators, and then failing to replace them when necessary;

- Failure to accommodate Plaintiffs by maintaining operable elevators or engaging in the interactive process in response to Plaintiffs' reasonable accommodation requests, instead ignoring these requests; and

- Otherwise failing, delaying, or improperly conducting maintenance and repairs of the elevators, failing to replace defective elevators when necessary, and failing to implement lawful reasonable accommodation policies, and emergency evacuation policies, to ensure that Plaintiffs and others similarly situated have equal access to their housing including when the elevators go out of service. Defendants' violations of the FHAA have harmed and will continue to harm Plaintiffs in the future.

36. Defendants' discriminatory and wrongful conduct is ongoing. Defendants maintain a pattern and practice of denying Plaintiffs full and equal access to their dwelling by failing to maintain accessible paths of travel through the failure and refusal to secure and maintain an adequate number of working elevators. Plaintiffs have no adequate remedy at law to redress the wrongs set forth herein. Declaratory and injunctive relief are therefore appropriate remedies.

37. Defendants' conduct was willful, oppressive, and/or fraudulent and involved reckless disregard or callous indifference to Plaintiffs' rights.

38. Based on the foregoing, Plaintiffs are entitled to actual damages, punitive and exemplary damages and injunctive and declaratory relief, attorneys' fees and costs as set forth below.

## SECOND CAUSE OF ACTION

### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794 *ET SEQ.*

39. Plaintiffs incorporate by reference the preceding paragraphs.

40. Plaintiffs plead this claim against all Defendants.

41. Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "[N]o otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance" 29 U.S.C. § 794; 24 C.F.R. § 8.4(a). Such programs and activities are prohibited from discriminating against qualified individuals with disabilities because a "recipient's facilities are inaccessible to or unusable by individuals with handicaps." *see* 24 C.F.R. § 8.20.

42. In relevant part, Section 504 requires covered programs to: refrain from disability discrimination, ensure program access, provide participants with reasonable accommodations, refrain from utilizing discriminatory criteria or methods of administration, and account for accessibility in alterations to housing facilities.

43. Each Defendant has been and is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504. These federal funds include HUD Project Based Section 8 funds.

27. The housing that Defendants offer is a new multifamily housing project within the meaning of Section 504.

28. Plaintiffs have been and are qualified individuals with disabilities within the meaning of Section 504 and are otherwise qualified to participate in or receive benefits from Defendants' programs or activities. 29 U.S.C. § 794(b).

29. The Program, including its housing and other benefits, activities, and services are a program, service, or activity that Defendants offer within the meaning of Section 504.

30. Section 504 provides that Defendants may not in providing any

housing, aid, benefit, or service at St. Teresa's directly or through contractual, licensing, or other arrangements, solely on the basis of disability:

a.   "Deny a qualified individual with handicaps the opportunity to participate in, or benefit from, the housing, aid, benefit, or service." 24 C.F.R. § 8.4(b)(1)(i).

b.   Provide a qualified individual with handicaps with any housing, aid, benefit, or service that is not as effective in affording the individual an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 24 C.F.R. § 8.4(b)(1)(iii).

c.   "Aid or perpetuate discrimination against a qualified individual with handicaps by providing significant assistance to an agency, organization, or person that discriminates on the basis of handicap in providing any housing, aid, benefit, or service to beneficiaries in the recipient's federally assisted program or activity." 24 C.F.R. § 8.4(b)(1)(v).

31. Under Section 504, each Defendant must "operate each existing housing program or activity receiving Federal financial assistance so that the program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with handicaps." 24 C.F.R. § 8.24(a). Housing receiving HUD Project Based Section 8 must "comply with program accessibility requirements of section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) and implementing regulations at 24 CFR part 8." 24 C.F.R. § 983.102.

32. Defendants must also ensure that new multifamily housing projects "be designed and constructed to be readily accessible to and usable by individuals with handicaps." 24 C.F.R. § 8.22.

33. Section 504 provides that Defendants may not in directly or through contractual or other arrangements:

a.   Utilize "criteria or methods of administration" the purpose or effect of which would "subject qualified individuals with

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES; DEMAND FOR JURY TRIAL - 13

handicaps to discrimination solely on the basis of handicap." 24 C.F.R. § 8.4(b)(4)(i);

b. Defeat or substantially impair the accomplishment of the objectives of the recipient's federally assisted program or activity for qualified individuals with a particular handicap involved in the program or activity, unless the recipient can demonstrate that the criteria or methods of administration are manifestly related to the accomplishment of an objective of a program or activity." 24 C.F.R. § 8.4(ii).

c. "Perpetuate the discrimination of another recipient if both recipients are subject to common administrative control…" 24 C.F.R. § 8.4(iii).

34. Defendants' actions and omissions discriminate against Plaintiffs solely by reason of their disability in violation of Section 504. Defendants' discriminatory conduct includes but is not limited to denying Plaintiffs' meaningful access to housing by failing to install and maintain operable elevators.

35. Defendants' violations of Section 504 have harmed and will continue to harm Plaintiffs in the future.

36. Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

37. Plaintiffs seek injunctive relief, and attorney's fees, costs and litigation expenses to address these violations.

### THIRD CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, CALIFORNIA GOVERNMENT CODE § 12900 *ET SEQ.*

38. Plaintiffs incorporate by reference the preceding paragraphs.

39. Plaintiffs plead this claim against all Defendants.

40. The California Fair Employment and Housing Act (FEHA) makes it unlawful to "otherwise make unavailable or deny a dwelling based on discrimination because of…disability." Cal. Gov't Code § 12955(k).

41. FEHA further provides that "[a]ll covered multifamily dwellings with a building entrance on an accessible route shall be designed and constructed in a manner [that allows] the public and common areas [to be] readily accessible to and usably by person with disabilities." Cal. Gov't Code § 12955(d).

42. FEHA further provides that "discrimination" for purposes of Section 12955, includes, but is not limited to, a failure to design and construct a covered multifamily dwelling in a manner that allows access to, and use by, disabled persons by providing, at a minimum, the following features:…"

43. FEHA prohibits practices that have unlawful discriminatory effects on protected classes, including persons with disabilities. Cal. Gov. Code § 12955.7; *see also* Cal. Code Regs., tit. 2, §§ 12060, 12061-2.

44. Defendants provide multifamily housing at St. Teresa's subject to FEHA.

45. Plaintiffs are all individuals with disabilities within the meaning of FEHA.

46. Defendants' actions and omissions discriminate against Plaintiffs because of their disability in violation of FEHA. Defendants' discriminatory conduct includes but is not limited to failure to install working elevators; repeated failure to maintain accessible features of their building, *i.e.,* operable elevators, by effective repairs or replacement as needed; and failure to implement lawful reasonable accommodation policies, and emergency evacuation policies, to ensure that Plaintiffs and others similarly situated have equal access to their housing including when the elevators go out of service.

47. Defendants' discriminatory practices have had a disproportionate adverse

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES; DEMAND FOR JURY TRIAL - 15

impact on persons with disabilities including Plaintiffs, causing discriminatory effects in violation of FEHA.

48.Defendants' violations of Section 12900 *et seq.* have harmed and will continue to harm Plaintiffs in the future.

49.Plaintiff seeks injunctive relief, declaratory relief, actual and punitive damages, and attorney's fees, costs and litigation expenses to address these violations.

**FOURTH CAUSE OF ACTION**

**VIOLATIONS OF CALIFORNIA GOVERNMENT CODE, SECTION 11135**

50.Plaintiffs incorporate by reference the preceding paragraphs.

51.Plaintiffs plead this claim against all Defendants.

52.California law affords people with disabilities a right to "equal access" to programs and activities subsidized by state funds; such programs may not discriminate against people with disabilities. Cal. Gov't Code § 11135(a); *see also* Cal. Code Regs., tit. 2, §§ 11140 *et seq.*

53.State-funded programs may not deny a person the opportunity to participate in, or benefit from, its services and programs. Cal. Code Regs., tit. 2, § 11154(a). Such programs must provide effective access that results in an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others. *Id*. § 11154(c). Such programs may not "otherwise limit a person in the enjoyment of any right, privilege, advantage or opportunity enjoyed by" the general public. *Id*. § 11154(g). The design and construction of state-funded programs must comply with accessibility standards and programs and services must be operated in a manner that that the program or activity, when viewed in its entirety, is readily accessible to disabled persons. *See e.g.*, Cal. Code Regs., tit. 2, §§ 11191, 11199.

54.Government Code Section 11135(b) incorporates the protections and

prohibitions contained in the ADA and its implementing regulations.

55. Defendants receive financial assistance from the State of California sufficient to invoke the coverage of Government Code Section 11135.

56. At all times relevant to this action, Plaintiffs have been and are qualified individuals with a disability within the meaning of California law. Cal. Gov't Code § 12926.

57. Defendants' acts and omissions discriminate against Plaintiffs by of their disability in violation Section 11135 and its regulations. Defendants' discriminatory conduct includes but is not limited to failing to install and maintain operable elevators, unlawfully operating housing in such a way that it is not readily accessible to and usable by individuals with disabilities, failing to implement lawful reasonable accommodation policies and emergency evacuation policies, and denying Plaintiffs effective access to their homes, and unequal benefit of the programs and services the Defendants provide.

58. Pursuant to California Government Code § 11139, Plaintiffs have a private right of action to enforce California Government Code § 11135(b).

59. Defendants' violations of California Government Code § 11135 have harmed and will continue to harm Plaintiffs.

60. Plaintiffs seek declaratory and injunctive relief as well as reasonable attorneys' fees, costs and litigation expenses to address these violations.

## FIFTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES, BUS. & PROF. CODE §§ 17200, *et seq.*

61. Plaintiffs incorporate by reference the preceding paragraphs.

62. Plaintiffs plead this claim against all Defendants.

63. Business and Professions Code Section 17200, *et seq.*, prohibits businesses from engaging in unlawful, fraudulent, or unfair business practices.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES; DEMAND FOR JURY TRIAL - 17

64. An action based on Section 17200 to redress an unlawful business practice borrows violations of other laws and treats them as a violation of Section 17200. In other words, a business practice is "unlawful" under Section 17200 when it violates another federal, state, or local law. The violated law that serves as a basis for a Section 17200 claim is referred to as a "predicate" law.

65. California Business and Professions Code Section 17203 allows private parties who have lost money or property to ask a court to enjoin unlawful business practices.

66. Plaintiffs have suffered economic injury in the form of payment of rent while being denied equal access in and out of their apartment units as a result of Defendants' unlawful business acts herein.

67. Accordingly, Plaintiffs are parties who have "suffered injury in fact and has lost money or property as a result of …unfair competition," and thus has standing under Business and Professions Code Section 17204 to enjoin Defendants' unlawful conduct.

68. FEHA prohibits discrimination based on disability, including in the context of reasonable accommodation requests.

69. Defendants violated FEHA by discriminating against Plaintiffs based on disability.

70. FEHA prohibits practices that have unlawful discriminatory effects.

71. Defendants violated FEHA by administering practices that have unlawful discriminatory effects, including on persons with disabilities.

72. Defendants, and each of them, have violated, are violating, and plan to continue to violate Section 17200 through their unlawful business acts and practices, which violate, *inter alia,* FEHA, FHAA, Government Code Section 11135 and its regulations, Section 504 of the Rehabilitation Act, Health and Safety Code Section 17920.3, and the California Building Code.

73. Defendants engaged in practices that constitute unfair competition, as that term is defined in Section 17200 *et seq.* of the California Business and Professions Code.

74. Defendants injured Plaintiffs by engaging in unlawful and unfair business practices in violation of California Business and Professions Code Section 17200, *et seq.*

75. Defendants, and each of them, have independently and collectively engaged in and will continue to engage in unlawful and unfair business practices unless specifically enjoined from doing so by this Court.

76. Plaintiffs are entitled to restitution disgorging Defendants of all monies paid for these illegal practices.

## SIXTH CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA DISABLED PERSONS ACT, CIVIL CODE § 54 *et. seq.* (Damage Claim Only)

77. Plaintiffs incorporate by reference the preceding paragraphs.

78. Plaintiffs plead this claim against all Defendants.

79. The Disabled Persons Act (DPA) requires, "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Civ. Code § 54.1(b)(1).

80. St. Teresa's is a housing accommodation within the meaning of Civil Code section 54.1(b)(2). Plaintiffs are each a person with a disability within the meaning of the DPA.

81. Defendants have violated the DPA as follows:

a.   Denying Plaintiffs full and equal access to their housing accommodations, (Civ. Code § 54.1(b)(1));

b.   Failure and refusal to construct and/or alter the facilities in compliance with State building codes, and/or to maintain them in accessible condition;

c.   Refusing to "make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises." (Civ. Code § 54.1(b)(3)(B));

d.   Failure and refusal to maintain their accessible features, including but not limited to their elevator in conformity with American Society of Mechanical Engineers "ASME" Standard A17.1 as mandated by Title 24, California Code of Regulations (sometimes called the "California Building Code" and hereafter called "CBC") section 1116B.1 *et seq.*, in violation of CBC section 1101B.3;

e.   Failure and refusal to provide an accessible means of ingress and egress in from their tenant apartments which are required to be accessible in violation of CBC sections 1007 *et seq.* and 1102 *et seq.*, and

f.   Failure and refusal to provide an accessible entrance and accessible route to and through all apartments which are required to be accessible and/or adaptable in violation of CBC sections 1106A.1 *et seq.*

82. Plaintiffs have each suffered actual damage as a result of such failures

which they allege is the result of Defendants' knowing and intentional violation of their rights as disabled persons under California Law.

83. Based upon the foregoing, Plaintiffs are entitled to statutory damages, actual damages, punitive and exemplary damages as set forth below.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment including the following specific relief against Defendants:

1. Declare that Defendants' discriminatory practices violate the Fair Housing Amendments Act; Section 504 of the Rehabilitation Act of 1973; the California Fair Employment and Housing Act; Government Code section 11135; and the Unfair Business Practices Act.

2. An Order enjoining Defendants, their agents, employees, and all persons acting in concert from continuing the unlawful acts, conditions and practices described in the Complaint and denying Plaintiffs meaningful access to their housing and an accessible route to and from their apartment units, including by:

   a. Defendants taking necessary steps to ensure that all three elevators at St. Teresa's are in full and safe operating condition,

   b. Defendants implementing policies of nondiscrimination and reasonable accommodation for tenants with mobility disabilities.

3. Retain jurisdiction over Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts, and omissions as complained of herein no longer occur.

4. Award to Plaintiffs all reasonable statutory damages, general damages, treble damages and punitive damages in amounts according to proof;

5. Award reasonable attorney fees, litigation expenses and costs of this proceeding as provided by federal and state law.

6. Award prejudgment interest pursuant to California Civil Code section 3291; and

7. Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury for all claims for which a jury is permitted.

Dated: July 12, 2023

*Ann Menasche*

Ann E. Menasche